## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ANTHONY DONALDSON,** | ) | |
| **No. B88413,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 16−cv−01128−MJR** |
| **vs.** | ) | |
| | ) | |
| **JOHN BALDWIN,** | ) | |
| **JACQUELINE LASHBROOK** | ) | |
| **BETSY SPILLER,** | ) | |
| **ASSISTANT WARDEN EDWARDS,** | ) | |
| **MAJOR ALLEN,** | ) | |
| **MAJOR CLELLEND,** | ) | |
| **MAJOR ADAMS,** | ) | |
| **CAROL MCBRIDE,** | ) | |
| **TERRI CHAPMAN,** | ) | |
| **LT. PEARCE,** | ) | |
| **COUNSELOR HARTMEN,** | ) | |
| **WEXFORD HEALTH CORPS.** | ) | |
| **CHRISTINE BROWN,** | ) | |
| **DR. SHAH,** | ) | |
| **MARSHA HILL, and** | ) | |
| **MAJOR MALCOLM,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Anthony Donaldson, an inmate in Pinckneyville Correctional Center ("Pinckneyville"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The bulk of Plaintiff's claims stem from an altercation Plaintiff had with a correctional officer identified as Major Allen. In connection with these claims, Plaintiff seeks monetary damages from John Baldwin (director, IDOC), Jacqueline Lashbrook (warden), Betsy

Spiller (assistant warden), Edwards (assistant warden), Allen (major), Clellend (major), Adams (major), Carol McBride (lieutenant), Terri Chapman (sergeant), Pearce (lieutenant), Hartman (counselor), Wexford Health Corps. (corporate healthcare provider), Christine Brown (healthcare administrator), Shah (doctor), Marsha Hill (nurse), and Malcolm (major).   This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless.  *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557.  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

### The Complaint

According to the Complaint, on July 18, 2015, Plaintiff was assaulted by Allen ("July 18 Incident"). (Doc. 1, p. 10, ¶ 1). Specifically, Plaintiff states he was asleep in his bunk when he began to have a seizure. *Id.* Plaintiff's cell mate, Aaron Petre, alerted staff to Plaintiff's condition. *Id.* When Plaintiff awoke from his seizure, he was disoriented and realized he was on the floor with his hands behind his back. (Doc. 1, p. 10, ¶ 2). Plaintiff heard an unidentified officer indicate that Plaintiff was waking up. (Doc. 1, p. 10, ¶ 3). At that point, Allen approached Plaintiff while "hollering a whole bunch of stuff." *Id.* Plaintiff was still disoriented and was unable to fully appreciate his surroundings. *Id.* Allen instructed two unidentified prison officials to get on both sides of Plaintiff and stand him up. *Id.* As Plaintiff was being pulled up, Allen continued to yell at Plaintiff. *Id.* Allen then said "fuck this" and punched Plaintiff in the left side of his face, knocking him unconscious. *Id.* When Plaintiff regained consciousness, he was in pain and observed Allen standing over him. (Doc. 1, p. 10, ¶ 4). Allen told Plaintiff if he lifted his head his "whole fucking face would be in the pavement." *Id.* Allen continued to threaten Plaintiff and instructed an officer to take "[Plaintiff's] ass to healthcare." *Id.* Plaintiff was fearful of Allen, which prompted him to say to the "escorting officer," "Please get me out of here before he continue to further hurt me." *Id.* Plaintiff does not expressly state whether he was taken to healthcare at this point in time. However, throughout his Complaint, Plaintiff alleges that he has been denied medical care for injuries he received during the July 18 Incident. (Doc. 1, p. 11, ¶ 7).

Sometime thereafter, Plaintiff asked Hartman, a counselor, to obtain grievance forms for Plaintiff regarding the July 18 Incident.  (Doc. 1, p. 10, ¶ 5).  Counselor Hartman failed to respond to this request.  *Id*.  As a result, on August 1, 2015, Plaintiff began a hunger strike.  *Id*. Plaintiff also spoke with Pearce and Clellend, informing them that he feared for his life and believed someone in the facility was going to kill him.  *Id*.

After declaring his intent to begin a hunger strike, Plaintiff was transferred to a cell in the segregation unit.  (Doc. 1, p. 10 ¶ 6; Doc. 1, p. 11, ¶ 11).  The water in Plaintiff's new cell was shut off.  *Id*.  Plaintiff remained in that cell, without running water, for 5 days.  *Id*.  Plaintiff does not specify who was responsible for shutting off the water in his cell.

After 3 days of being confined to a cell in the segregation unit with no running water (and 3 days into his hunger strike), Plaintiff was visited by Spiller and Adams.  *Id.*  Spiller and Adams came to Plaintiff's cell to discuss the hunger strike.  *Id.*  Plaintiff explained his "situation" to both Defendants and informed them that his water had been shut off.  *Id.*  Specifically, Plaintiff stated he was feeling light headed, suffering from blurry vision, and believed he was going to pass out from dehydration.  (Doc. 1, p. 11, ¶ 6).  Spiller responded by stating "so what you're on a hunger strike what makes you think I care?"  *Id.*  Plaintiff also stated that he had been assaulted by Allen, he had been denied medical care for the injuries he sustained as a result of Allen's assault, and his requests for grievance forms were being ignored by Hartman.  (Doc. 1, p. 11, ¶ 7).  In response to Plaintiff's allegations, Spiller said "You're not supposed to feel safe here. This is prison.  This is how you pay society back."  *Id.*  Spiller then walked away.  (Doc. 1, p. 11, ¶ 8).

The following day, Hill and Chapman arrived at Plaintiff's cell with 3 trays of food. (Doc. 1, p. 11, ¶ 9).  Defendants began dumping the food in a trash can and one of them said "ya

see you stupid fuck we don't give a damn about you or if you ever eat again." *Id*.  Hill and Chapman returned the next day.  (Doc. 1, p. 11, ¶ 10).  Plaintiff was asked to provide a urine sample.  *Id*.  Chapman, once again, knocked over food trays and stated "What, you still think we give a damn about you?"  *Id*.  At that point, Chapman walked away.  *Id*.

Shah visited Plaintiff on the sixth day of his hunger strike.  (Doc. 1, p. 11, ¶ 11).  At this time, Plaintiff was still housed in the  in a cell without running water.  *Id*.  Shah had Plaintiff transferred to a cell in the healthcare unit ("HCU").  *Id*.  After being transferred to the HCU, Plaintiff continued his hunger strike.  (Doc. 1, p. 11, ¶¶ 11-13).  Plaintiff was visited by Spiller who made comments regarding Plaintiff's continued hunger strike.  (Doc. 1, p. 11, ¶ 13).

On August 11, 2015, Lashbrook, Clellend, and Adams arrived at Plaintiff's HCU cell.  (Doc. 1, p. 11, ¶ 14).  Plaintiff again reported that he had been assaulted by Allen, denied medical care for injuries sustained during the assault, and denied access to the grievance process.  (Doc. 1, p. 12, ¶ 14).  Lashbrook responded by saying "he's not supposed to issue out grievances to offenders seeking to write grievances on my officers."  *Id*.

Several times during his stay in the HCU, Plaintiff spoke with his therapist regarding his anxiety and emotional state.  (Doc. 1, p. 12, ¶ 15).  Plaintiff's therapist informed him there was a process that had to be followed and maybe, if he would end his hunger strike, she could convince the proper officials to review Plaintiff's allegations. *Id*.

On August 18, 2015, as Plaintiff's hunger strike continued, he was visited by Lashbrook, Clelland, and Malcolm.  (Doc. 1, p. 12, ¶ 16).  Lashbrook stated "You're real adamant about this hunger strike.  You still waiting on Springfield? You know don't nobody care if you die."  *Id*.

During the hunger strike, Plaintiff was also visited by Edwards.  (Doc. 1, p. 12, ¶ 17).  Edwards told Plaintiff that no matter how long his hunger strike continued, Edwards would not

contact Springfield and would not instruct his staff to clear Plaintiff as a hunger strike patient. *Id*. Edwards told Plaintiff to "just go ahead and continue to hurt yourself." *Id*.

Plaintiff further alleges that Brown and Wexford failed to provide him with the proper protocols for a hunger strike patient and failed to provide appropriate medical care. (Doc. 1, p. 12, ¶ 18). Plaintiff indicates the hunger strike lasted a total of 24 days and during that time he was under Brown's watch. *Id*.

On January 21, 2016, Plaintiff filed a grievance regarding the July 18 Incident. (Doc. 1, p. 13, ¶ 19). The grievance was ignored and Plaintiff reported the same to Spiller and Lashbrook. (Doc. 1, p. 13, ¶¶ 20-22).

On February 13, 2016, Plaintiff declared a hunger strike to two correctional officers[1] and Webb. (Doc. 1, p. 13, ¶ 23). Plaintiff does not provide any further allegations or details in relation to the hunger strike initiated in February 2016.

On February 28, 2016, Plaintiff informed Spiller that he was in need of a crisis team and a phone call because he had just learned that his grandparents had passed away. (Doc. 1, p. 13, ¶ 24). The request was denied. *Id*.

On March 24, 2016, Plaintiff was called for an interview with internal affairs regarding the July 18 Incident. (Doc. 1, p. 13, ¶ 25).

On March 25, 2016, Plaintiff wrote a letter to Lashbrook informing her he feared for his health and safety. (Doc. 1, p. 13, ¶ 26). Plaintiff also stated that he suffered from seizures and requested placement in a cell with emergency buttons. *Id*. The letter was ignored. *Id*.

On April 25, 2016, Plaintiff was sleeping in his cell and suffered from a seizure. (Doc. 1, p. 13, ¶ 27). When Plaintiff regained consciousness he was in the HCU. *Id*. Lashbrook was

---

[1] Plaintiff attempts to identify the correctional officers by name. However, the Court is unable to decipher Plaintiff's handwriting. The correctional officers are not defendants in this action.

standing over Plaintiff.  *Id.*  Lashbrook, without cause, had the medical staff administer charcoal and pump Plaintiff's stomach.  *Id.*

Plaintiff seeks monetary damages in relation to his claims.   (Doc. 1, p. 15).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 15 counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.  Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

| | |
|---|---|
| **Count 1-** | Eighth Amendment claim against Allen for excessive force during the July 18 Incident. |
| **Count 2-** | Eighth Amendment claim against Allen for deliberate indifference to Plaintiff's serious medical needs in relation to the July 18 Incident |
| **Count 3-** | Eighth Amendment claim against Lashbrook for directing unidentified medical staff to administer charcoal and pump Plaintiff's stomach absent medical necessity, thereby interfering with or delaying medical treatment |
| **Count 4-** | Fourteenth Amendment claim against Lashbrook for directing unidentified medical staff to administer charcoal and pump Plaintiff's stomach |
| **Count 5-** | Eighth Amendment claim against Spiller, Adams, Hill, Chapman, Shah, Lashbrook, Clellend, Malcolm, Edwards, Brown, and Wexford for deliberate indifference to Plaintiff's serious medical needs during a hunger strike |
| **Count 6-** | Eighth Amendment claim against Spiller, Adams, Lashbrook, and Clellend for deliberate indifference to Plaintiff's serious medical needs in relation to the July 18 Incident |
| **Count 7-** | Eighth Amendment claim against Spiller for deliberate indifference to Plaintiff's mental health needs on February 28, 2016 |

| | |
|---|---|
| **Count 8-** | Eighth Amendment claim against Lashbrook for deliberate indifference to Plaintiff's serious medical condition (seizures) |
| **Count 9-** | Lashbrook violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and/or Rehabilitation Act of 1973, § 504, 29 U.S.C. §§ 794-794e, by failing to accommodate Plaintiff's disability-related needs when he refused to place Plaintiff in a cell with an emergency call button |
| **Count 10-** | Eighth Amendment claim against Hill, Chapman, Lashbrook, and Edwards for verbal threats and harassment during Plaintiff's initial hunger strike |
| **Count 11-** | Eighth Amendment Claim for failure to protect against Lashbrook, Pearce, and Clellend |
| **Count 12-** | Fourteenth Amendment claim against Hartman for ignoring Plaintiff's requests for grievance forms about the July 18 Incident |
| **Count 13-** | Fourteenth Amendment claim against Spiller, Adams, Clellend, and Lashbrook for failing to respond to Plaintiff's reports that his requests for grievance forms about the July 18 Incident were being ignored |
| **Count 14-** | Fourteenth Amendment claim against Spiller and Lashbrook for failing to respond to Plaintiff's report that his January 21, 2016 grievance about the July 18 Incident had been ignored |
| **Count 15-** | Defendants subjected Plaintiff to unconstitutional conditions of confinement by placing Plaintiff in a cell without running water |

**Counts 1** and **2** shall proceed against Allen in his individual capacity.   **Count 3** shall proceed against **Lashbrook** in her individual capacity.   **Counts 4 through 11** and **Count 15** shall be **DISMISSED** without prejudice.   **Counts 12 through 14** shall be **DISMISSED** with prejudice.

Further, the Court notes that McBride and Baldwin are identified in the caption of the Complaint.   However, other than identifying who they are, McBride and Baldwin are not mentioned in the body of the Complaint.   To meet the personal involvement requirement necessary for § 1983 liability, a plaintiff must assert a specific act of wrongdoing by a particular

defendant.  *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir.1974).  Therefore, as to McBride and Baldwin, the Complaint fails to factually state any cause of action.  Both Defendants shall be dismissed from the action.

Finally, the Complaint attempts to assert claims as to Spiller, Edwards, Clellend, Adams, Chapman, Pearce, Hartmen, Wexford, Brown, Shah, Hill, and Malcolm.  However, as is set forth more fully below, the allegations in the Complaint fail to sufficiently plead claims against these defendants.  As such, these Defendants shall be dismissed from the action.

**Count 1**

The " 'unnecessary and wanton infliction of pain' on a prisoner violates his rights under the Eighth Amendment."  *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  However, the Eighth Amendment "does not forbid every use of force against a prisoner."  *Mitchell v. Krueger*, 594 F. App'x.  874, 876 (7th Cir. 2014); *id.* ("not every 'malevolent touch' by a security officer, however, implicates the Constitution") (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).  The "use of *de minimis* force, so long as it 'is not of a sort repugnant to the conscience of mankind,' is not of Eighth Amendment concern." *Lewis*, 581 F.3d at 475 (quoting *Hudson*, 503 U.S. at 9-10).  Further, the use of "[n]on-*de minimis* force runs afoul of the Eighth Amendment only when it is intended 'maliciously and sadistically to cause harm.'"  *Lewis,* 581 F.3d at 476 (quoting *Hudson,* 503 U.S. at 7).  The infliction of pain is *per se* malicious if it is done " 'totally without penological justification.' " *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir.2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 737 (2002)).

Plaintiff alleges that on July 18, 2015, he suffered from a seizure.  When Plaintiff began to regain consciousness, he was on the floor face down with his hands behind his back.  Plaintiff,

who was still disoriented from the seizure, heard Allen yelling at him and heard Allen order two unidentified officers to stand Plaintiff up.  Once Plaintiff was standing, Allen yelled "fuck this" and punched Plaintiff in the left side of his face, causing Plaintiff to lose consciousness.  When Plaintiff regained consciousness, he was in severe pain and Allen continued to threaten him.  These allegations are sufficient, at this stage in the litigation, to state an Eighth Amendment claim for excessive force as to Allen.

Accordingly, **Count 1** shall proceed as to **Allen**.

## Count 2

 "A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical condition is 'objectively, sufficiently serious.' " *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The subjective component requires a prisoner to demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *Greeno*, 414 F.3d at 653.  Specifically, the officials "must know of and disregard an excessive risk to inmate health."  *Greeno*, 414 F.3d at 653.

The Seventh Circuit has held that a medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  Additionally, as is relevant here, the Seventh Circuit has held that a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]"  *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996).

Plaintiff indicates that he suffered from a seizure.  When he regained consciousness, rather than receiving immediate medical attention, Allen punched him in the face.  Allen punched Plaintiff with such force it caused Plaintiff to lose consciousness.  Upon regaining consciousness, he was in severe pain.  At that point, Allen instructed unidentified officers to take Plaintiff to the HCU ("take his ass to healthcare").  Additionally, Plaintiff asked the "escorting officer" to "get me out of here" because he feared for his safety.  It is not clear whether Plaintiff was actually taken to HCU and what, if any, treatment he received.  However, subsequently in the Complaint, Plaintiff repeatedly alleges he was denied treatment in relation to the assault.  In fact, the denial of treatment was one of the issues that prompted Plaintiff's hunger strike.

The Court is persuaded that Plaintiff's seizure (and initial loss of consciousness in relation to the seizure) is an objectively serious medical condition.  Rather than seeking immediate medical care for Plaintiff, Allen punched Plaintiff and knocked him unconscious, causing severe pain.  The loss of consciousness caused by a punch to the face (particularly in light of the fact that Plaintiff had just suffered from a seizure) coupled with Allen's severe pain also constitutes an objectively serious medical condition.  Although not entirely clear, the Complaint suggests that Allen, the guard who assaulted Plaintiff after his seizure, denied Plaintiff's medical care.  Accordingly, reading the Complaint liberally, the Court finds that Plaintiff has sufficiently alleged that Allen responded to Plaintiff's serious medical needs with deliberate indifference.

While the Court takes no position regarding the ultimate merits of this claim, Plaintiff shall be allowed to proceed on **Count 2** as to **Allen** at this time.

**Count 3**

Plaintiff alleges that, on April 25, 2016, Lashbrook ordered unidentified medical staff to administer charcoal and pump Plaintiff's stomach.  Additionally, Plaintiff alleges this directive

11

(1) was issued without cause and (2) interfered with Plaintiff receiving appropriate medical treatment for his seizure.  As discussed in relation to Count 1 above, the use of non-de minimis force against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Additionally, delaying medical care or intentionally interfering with medical treatment once prescribed may establish deliberate indifference to medical needs in violation of the Eight Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed" may constitute deliberate indifference to a serious medical need, in violation of the Eighth Amendment).  Applying these standards, the Court is unable to dismiss Count 3 at this time.

Accordingly, Plaintiff's claims in **Count 3** may proceed against **Lashbrook** in his individual capacity to allow for further development of the record.

**Count 4**

Count 4 is premised on the same allegations at issue in Count 3.  These allegations implicate the Due Process Clause of the Fourteenth Amendment.  Under the Due Process Clause, An inmate has an interest in refusing unwanted medical treatment.  *See Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278-79, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990); *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990).  A regulation that impinges on this interest is valid if it is reasonably related to legitimate penological interests.  *Russell v. Richards*, 384 F.3d 444, 447 (7th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).  However, "that right is not absolute and is particularly susceptible to regulation in the prison setting."  *Davis v. Agosto,* 89

F. App'x 523, 528 (6th Cir. 2004). Claims of compelled treatment are usually assessed under the *Turner v. Safley* reasonable relationship standard. *Russel*, 384 F.3d at 447-48.[2]

Additionally, conscious-shocking interrogation techniques are sufficient to support a Fourteenth Amendment Due Process claim under § 1983. *Fox v. Hayes,* 600 F.3d 819, 841 (7th Cir. 2010). *See also Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (deputy sheriffs' actions in directing a physician to pump the plaintiff's stomach, which produced two capsules of morphine, which were used to obtain the conviction of the plaintiff for illegal drug possession, violated the Due Process Clause of the Fourteenth Amendment). For example, forcing "an emetic down a person's throat to forcibly extract evidence from a suspect's stomach shocks the conscience." *Fox,* 600 F.3d at 841 (citing *Tinker v. Beasley*, 429 F.3d 1324, 1329 (11th Cir. 2005)).

Here, the Complaint falls short of alleging facts sufficient to proceed on a Fourteenth Amendment claim. There is no allegation that Plaintiff attempted to refuse the medical procedure or that Plaintiff's rights were violated pursuant to an invalid prison regulation or policy. Additionally, there is no indication that Lashbrook's directive was issued to forcibly extract evidence from Plaintiff.

Accordingly, **Count 4** shall be **DISMISSED** without prejudice.

## Count 5 [3]

The Complaint indicates that Plaintiff declared a hunger strike on two separate occasions. Plaintiff's initial hunger strike began on August 1, 2015. (Doc. 1, p. 10, ¶ 5). Plaintiff's second

---

[2] In the context of involuntary medical treatment, the Seventh Circuit evaluates factors (1), (3), and (4) only. *Russel*, 384 F.3d at 448 n. 2.

[3] The legal framework for an Eighth Amendment deliberate indifference to serious medical needs claim is set forth above in the Court's discussion as to Count 1. Plaintiff's Complaint brings several claims for deliberate indifference to serious medical needs. For the sake of brevity, the Court will not repeat the general legal standards governing such claims. Rather, the Court incorporates by reference the general legal standards set forth in Count 1 for the elements that must be alleged in each of Plaintiff's deliberate indifference claims.

hunger strike began on February 13, 2016.  (Doc. 1, p. 13, ¶ 23).  Because Plaintiff does not provide any additional details with regard to his second hunger strike, the Court's analysis focuses only on the initial hunger strike.

The initial hunger strike appears to have lasted a total of 24 days.  (Doc. 1, p. 12, ¶ 18).  On the sixth day of Plaintiff's hunger strike, Plaintiff was visited by Shah, a prison physician.  (Doc. 1, p. 11, ¶ 11).   At that point, Shah had Plaintiff transferred to the HCU.  *Id.*[4]  After being transferred to the HCU, Plaintiff continued his hunger strike.

Throughout his hunger strike, Plaintiff was visited by various defendants who exhibited indifference to Plaintiff's hunger strike and/or verbally harassed Plaintiff.  Other than stating that he experienced light headedness, dehydration, and blurry vision on the third day of the hunger strike (Doc. 1, p. 11, ¶ 6), Plaintiff does not allege any serious medical condition requiring treatment.  As to Plaintiff's condition on the third day of the hunger strike, Plaintiff states he reported his symptoms to Spiller and Adams.  However, Spiller and Adams took no action.  (Doc. 1, p. 11, ¶¶ 7-8).  Three days later, Plaintiff was visited by Shah, a prison physician, and was transferred to the HCU.  As to Brown and Wexford, Plaintiff generically alleges that they failed to provide him with the proper protocols for a hunger strike patient and failed to provide appropriate medical care.  (Doc. 1, p. 12, ¶ 18).

The Seventh Circuit has held that, when an inmate declares a hunger strike, he cannot maintain an Eighth Amendment claim where he is not seen by medical personnel immediately, and the only effects are weight loss and temporary discomfort.  *Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011) (no deliberate indifference to medical needs where, after 25 days on hunger strike, inmate is taken to medical ward).  Considering the above, the mild discomfort Plaintiff

---

[4]  These are the only specific allegations as to Shah.

experienced on the third day of his hunger strike and the fact that Plaintiff was not seen by a physician or transferred to the HCU until 3 days after reporting this discomfort to Spiller and Adams (6 days after beginning the hunger strike) do not state an Eighth Amendment deliberate indifference claim.  Further, to the extent that Plaintiff is asserting a delay in treatment claim as to Spiller and Adams, the claim is subject to dismissal because Plaintiff does not allege that the delay caused any degree of harm.  *See Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015) (in a case where an inmate claims a delay in treatment as opposed to a total denial, the complaint must allege that the delay caused some degree of harm); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir.2002) (to be actionable, the delay must have had a detrimental effect on the inmate's health).

Additionally, the Complaint fails to meet the objective prong of an Eighth Amendment deliberate indifference claim.  The Complaint alleges that Spiller, Adams, Hill, Chapman, Shah, Lashbrook, Clellend, Malcolm, and Edwards came in contact with Plaintiff at various stages of his hunger strike.  However, there is no allegation that Plaintiff was suffering from any injury during these visits, let alone a serious injury or medical condition that would have placed Defendants "on notice" that Plaintiff faced a serious risk of harm to his health.  Without awareness of an objectively serious risk, Plaintiff cannot show that these Defendants were deliberately indifferent to a known risk of harm to his health.

Finally, as to Brown and Wexford, the allegation that a particular hunger strike protocol was not followed does not rise to the level of a constitutional violation.  *See Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir.1988) (en banc), cert. denied, 489 U.S. 1065 (1989) (a federal court does not enforce state law or regulations).

Accordingly, **Count 5** shall be **DISMISSED** without prejudice.

**Count 6**

Plaintiff alleges that on the third day of his initial hunger strike (approximately two weeks after the July 18 Incident) he informed Spiller and Adams that he had been denied medical care for the injuries he sustained as a result of the July 18 Incident.  (Doc. 1, p. 11, ¶ 7).  He further alleges that on August 11, 2015 (nearly a month after the July 18 Incident) he relayed the same information to Lashbrook, Clellend, and Adams.  The Complaint merely alleges that Plaintiff informed these Defendants he had previously been denied medical care.  It does not indicate that Plaintiff told any of these Defendants he was currently suffering from a specific serious injury that required treatment.  That is, there is no indication that these Defendants were aware of a presently existing objectively serious risk to the Plaintiff's health.  Without awareness of such a risk, Plaintiff cannot show that the Defendants were deliberately indifferent to a known risk of harm to his health.

Accordingly, **Count 6** shall be **DISMISSED** without prejudice.

**Count 7**

An inmate's need for treatment of a mental illness may be considered an objectively serious medical need. *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).  A medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Here, Plaintiff alleges that he informed Spiller he was in need of a crisis team and a phone call in relation to learning about the death of his grandparents.  (Doc. 1, p. 13, ¶ 24).  The request was denied.  *Id.*  There is no indication that Plaintiff had been diagnosed with any mental health condition.   Additionally, there is no indication that Plaintiff was suffering from an

objectively serious mental health condition that would have been obvious to a lay person such as Spiller.[5]  As such, Plaintiff has not alleged an objectively serious mental health need.  Further, Plaintiff does not allege that he suffered any actual harm as a result of Spiller's decision to deny his request.  As such, his claim is not actionable under the PLRA.  See 42 U.S.C. § 1997e.

For these reasons, **Count 7** is **DISMISSED** without prejudice.

**Count 8**

The Complaint indicates that Plaintiff suffers from seizures, an objectively serious medical condition.  *See King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) ("Medical conditions much less serious than seizures have satisfied the standard.").  On March 25, 2016, Plaintiff wrote a letter to Lashbrook informing her that he suffered from seizures and requesting placement in a cell with emergency buttons.  (Doc. 1, p. 13, ¶ 26).  The letter was ignored. Thereafter, on April 25, 2016, Plaintiff suffered from a seizure.  (Doc. 1, p. 13, ¶ 27).  The seizure was serious enough for Plaintiff to lose consciousness.  *Id.*  At some point, Plaintiff regained consciousness in the HCU.

The above allegations fall short of providing grounds for an Eighth Amendment claim for deliberate indifference.  Plaintiff's claim relates to a possible delay in care as opposed to a denial of care.  However, after reviewing the Complaint, the Court is unable to discern whether the absence of a call button resulted in a delay in treatment and, if so, whether the delay had an actionable detrimental effect on Plaintiff.  *See Conley v. Birch,* 796 F.3d 742, 749 (7th Cir. 2015)*; McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010); *Walker v. Benjamin,* 293 F.3d 1030, 1038 (7th Cir.2002).  Absent such allegations, the Complaint fails to state a claim for deliberate indifference.

---

[5] For example, Plaintiff does not allege that he informed Spiller he was suicidal or otherwise at risk of serious injury.

Accordingly, **Count 8** is **DISMISSED** without prejudice.

**Count 9**

Plaintiff does not specifically assert a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., or the Rehabilitation Act, 29 U.S.C. §§ 794-794e. However, courts "are supposed to analyze a litigant's claims and not just legal theories that he propounds," particularly when a litigant is proceeding *pro se*. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2010) (citations omitted). On this basis, the Court *sua sponte* considers whether Plaintiff has stated a claim under the ADA and/or Rehabilitation Act.

The allegations in Plaintiff's Complaint regarding Lashbrook's failure to accommodate Plaintiff's request for placement in a cell with an emergency call button implicate the ADA and/or Rehabilitation Act. The ADA and Rehabilitation Act prohibit discrimination against qualified individuals because of their physical or mental disability, including a failure to accommodate a disability. *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012). In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005).

The only proper defendant in a claim under the ADA or Rehabilitation Act is the state agency (or a state official acting in his or her official capacity). "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA. See 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros*, 684 F.3d at 670 (additional citations omitted). An inmate may sue state officials in their official capacity for prospective injunctive relief under Title II.

*Brueggeman ex rel. Brueggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003). Additionally, an inmate may bring a private cause of action for damages under Title II, *if* the state actor's conduct also violates the Eighth Amendment. *See U.S. v. Georgia*, 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006).

In the instant case, Plaintiff's history of seizures may qualify him as a disabled person for ADA purposes. 42 U.S.C. § 12102. *See Boyd v. Johnson,* 2011 WL 1196320, *6 (S.D. Ill. March 29, 2011) (Reagan, J.) (history of epilepsy coupled with mental health condition arguably qualified inmate as a disabled person for purposes of the ADA). Lashbrook's refusal to accommodate Plaintiff's request for placement in a cell with an emergency call button could provide a basis for prospective injunctive relief under Title II of the ADA. *See Id.* However, in the instant case, Plaintiff does not seek prospective injunctive relief. Plaintiff only seeks monetary damages in relation to his claims. Additionally, for reasons already discussed in relation to Count 8, Plaintiff has failed to state an actionable Eighth Amendment claim as to Lashbrook in relation to the emergency call button. Absent an actionable Eighth Amendment claim for damages, Plaintiff does not have a basis for pursuing damages under the ADA.

Accordingly, to the extent that Plaintiff intended state a claim under the ADA and/or Rehabilitation Act, **Count 9** shall be **DISMISSED** without prejudice.

## Count 10

Simple, run-of-the-mill verbal harassment does not state a constitutional claim—it does not "constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000). That said, more extreme instances of verbal harassment, especially verbal harassment that constitutes a grave threat to a prisoner's life or that could subject a prisoner to serious harm

by other inmates, could violate the Eighth Amendment.  *E.g., Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015); *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015); *Dobbey v. Illinois Dep't of Corrections*, 574 F.3d 443, 445 (7th Cir. 2009).

Plaintiff alleges that, at various points during his initial hunger strike, Hill, Chapman, Lashbrook, and Edwards taunted and harassed him.  (Doc. 1, p. 11, ¶ 10; Doc. 1, p. 12 ¶ 16; Doc. 1, p. 12, ¶ 17).  The conduct alleged in the Complaint amounts to simple verbal harassment.  It does not come close to the type of serious harassment that is actionable in a § 1983 claim.

Accordingly, **Count 10** shall be **DISMISSED** without prejudice.

**Count 11**

The Complaint fails to articulate a colorable Eighth Amendment claim for failure to protect against Lashbrook, Pearce, and Clellend.  The Supreme Court has held that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  In order for a plaintiff to succeed on such a claim, the plaintiff must prove prison officials were aware of a specific, impending and substantial threat to his safety, often by showing that he complained to prison officials about a specific threat to his safety.  *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Eighth Amendment "deliberate indifference" failure to protect claims brought pursuant to 42 U.S.C. § 1983 typically occur where an inmate has suffered some actual injury.   Indeed, the Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act," 42 U.S.C. § 1997e.  However, under some circumstances, a prisoner may be able to bring a failure to protect claim even though no physical injury has occurred. For instance, an inmate may seek "injunctive relief to prevent a substantial

risk of serious injury from ripening into actual harm." *Farmer v. Brennan,* 511 U.S. 825, 845 (1994).  If the "substantial risk of serious injury" has already passed, the prisoner plaintiff may be entitled to damages *if* the exposure to the risk of harm was the "result [of] an official's malicious or sadistic intent." *Babcock v. White,* 102 F.3d 267, 270 (7th Cir. 1996).  The prisoner plaintiff would not be able to recover compensatory damages in such a situation (compensatory damages would be barred by the PLRA), but they may seek nominal or punitive damages. *Calhoun v. DeTella,* 319 F.3d 936, 941 (7th Cir. 2003).

In the instant case, Plaintiff asserts that, after the July 18 Incident, he told Pearce and Clellend that he feared for his life and believed someone in the facility was going to kill him. (Doc. 1, p. 10, ¶ 5).  In addition, on March 25, 2016, Plaintiff wrote a letter to Lashbrook informing her he feared for his health and safety.  (Doc. 1, p. 13, ¶ 26).

The above allegations do not indicate that Plaintiff complained to Pearce, Clellend, or Lashbrook about a specific impending threat to his safety.  However, even if the Complaint alleged that Defendants were aware of a specific impending threat to Plaintiff's safety, it would still fail to state a colorable Eighth Amendment claim.  Plaintiff does not allege that he was physically injured as a result of Defendants' failure to act.  In addition, Plaintiff does not seek injunctive relief and has not alleged malicious or sadistic intent as to these Defendants.  Absent allegations of this nature, Plaintiff's claim fails.

Accordingly, **Count 11** shall be **DISMISSED** without prejudice.

## Counts 12, 13, and 14

It is well established that no independent constitutional claim will arise from a defendant's failure to respond to grievances, or any other breakdown in the prison grievance process. The Constitution requires no procedure at all, and the failure of state prison officials to

follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100–01 (7th Cir. 1982). As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). However, a basis for personal liability of a prison official for failure to address grievances or procedures may arise if the official receives correspondence that provides him or her with sufficient knowledge of an underlying constitutional deprivation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-81 (7th Cir. 2015) (finding that prison officials who received detailed correspondence about a failure to treat a medical condition may be personally liable for failing to act upon receipt of those grievances).

Plaintiff alleges violations of his Fourteenth Amendment due process rights by Hartman, Spiller, Adams, Lashbrook, and Clelland. None of these Defendants played a personal role in the underlying harm – the July 18 Incident. Further, the claims against these Defendants are premised on their failure to assist Plaintiff in pursuing a grievance against Allen, respond to Plaintiff's dissatisfaction with the grievance process, and/or respond to Plaintiff's complaints about lack of access to the grievance process. Such allegations fail to state a valid due process claim.

Therefore, **Counts 12, 13,** and **14** shall be **DISMISSED** with prejudice.

## Count 15

"Nothing in the Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell [.]" *Jelinek v. Roth*, No. 93–3316, 1994 WL

447266, at *2 (7th Cir. Aug. 19, 1994).  However, courts in the Seventh Circuit have held that inmates are entitled to drinking water; after all, "[w]ater is, undoubtedly, a necessity of life." *Dillard v. Washington*, No. 96 C 698, 1998 WL 142360, at *3 (N.D. Ill. Mar. 20, 1998); *see also Davis v. Biller*, No. 00 C 50261, 2003 WL 22764872, at *2 (N.D. Ill. Nov. 18, 2003) (holding inmates have a basic right to adequate drinking water).  Consequently, a lack of running water in an inmate's cell is not a constitutional violation where the inmate has access to drinking water in other prison areas.  *See Ramirez v. Beatty*, No. 93–2306, 1994 WL 75897, at *3 (7th Cir. March 8, 1994) (holding an inmate's complaint that he was "housed in a cell without running water" did not state an objectively serious deprivation because he "had access to other cells which contained working plumbing").

To determine whether Plaintiff has stated a Constitutional claim for a lack of drinking water, the court must evaluate both the severity and duration of the deprivation.  *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997).  Although the Complaint indicates that Plaintiff was without running water for approximately six days during his initial hunger strike, the Court is unable to engage in any meaningful analysis with regard to the severity of the alleged deprivation.  This is because Plaintiff's allegations focus on his lack of running water.  The Complaint does not indicate that Plaintiff was deprived of drinking water during this time period.  Because Plaintiff has not provided any details as to whether or to what extent he was deprived of *drinking water* or other beverages for the six days that running water was turned off in his cell, it is impossible to tell whether Plaintiff has stated an actionable claim for lack of drinking water.

In addition, other than alleging that he informed certain Defendants his cell lacked running water, Plaintiff does not direct this claim against any specific Defendant.  Absent this information, Plaintiff has failed to allege personal involvement as to any Defendant that is

23

sufficient to state a claim. *See Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation."). Further, without identifying who is responsible for the alleged violation, the Complaint does not provide the type of notice contemplated under Rule 8. *See Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (discussing fair notice).

Accordingly, **Count 15** shall be **DISMISSED** without prejudice.

## Pending Motions

Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2) shall be addressed in a separate Order of this Court.  However, for purposes of determining how service of process shall proceed, the Court observes that Plaintiff appears to qualify for pauper status.  Accordingly, Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **GRANTED,** service of summons and the Complaint will be effected at government expense. *See* 28 U.S.C. § 1915(d).

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) shall be **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for a decision.

## Disposition

The Clerk is directed to **TERMINATE** the following defendants as parties in CM/ECF, based on Plaintiff's failure to sufficiently plead claims against them:  **BALDWIN, SPILLER, EDWARDS, CLELLEND, ADAMS, MCBRIDE, CHAPMAN, PEARCE, HARTMEN, WEXFORD, BROWN, SHAH, HILL,** and **MALCOLM.**

**IT IS HEREBY ORDERED** that **COUNTS 4 through 11** and **COUNT 15** are **DISMISSED** without prejudice.   **COUNTS 12 through 14** shall be **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that **COUNTS 1** and **2** shall proceed against **ALLEN** in his individual capacity.   **COUNT 3** shall proceed against **LASHBROOK** in her individual capacity.

With respect to **COUNTS 1 and 2,** the Clerk of the Court shall prepare for Defendant **ALLEN:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).   With respect to **COUNT 3**, the Clerk of the Court shall prepare for Defendant **LASHBROOK**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).   The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3).  Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the

Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

     **IT IS SO ORDERED.**

     **DATED:  February 8, 2017**

**s/ MICHAEL J. REAGAN**
**Chief Judge**
**United States District Court**
